

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*Calvin C. Miner*
*Assistant United States Attorney*
*Calvin.Miner@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4860*
*MAIN: 410-209-4800*
*FAX: 410-962-0717*

January 28, 2026

The Honorable James K. Bredar
United States District Judge
101 W. Lombard Street
Baltimore, Maryland 21201

    Re:    <u>United States v. Marvin Miller</u>, Criminal No. JKB-24-0164

Dear Judge Bredar:

    I write in advance of the sentencing hearing, currently scheduled for February 11, 2026. As fully explained below, the Government recommends a sentence of 120 months' imprisonment.

## PROCEDURAL HISTORY

    A federal grand jury returned an indictment against Mr. Miller and one other for charges of conspiracy to distribute controlled substances and possession with intent to distribute controlled substances on May 22, 2024. ECF no.1. On October 16, 2025, Mr. Miller pleaded guilty to Counts One and Two of the superseding information that charged him with conspiracy to distribute controlled substances and possession with intent to distribute controlled substances. ECF no.65.

## FACTUAL BACKGROUND

    The Government incorporates the facts in the Presentence Investigation Report ("PSR") and the statement of facts filed in support of the Defendant's plea agreement.

    In 2023, the Drug Enforcement Administration ("DEA") were investigating a drug trafficking organization ("DTO") operating in the Baltimore Metropolitan area. As part of that investigation, law enforcement seized over 100 kilograms of cocaine. Marvin Miller, the Defendant, operated one of the DTO's stash houses in Baltimore, Maryland.

    Mr. Miller's stash house was identified in April 2023. Investigators maintained surveillance on Mr. Miller and his stash location via a covert camera and electronic surveillance. Surveillance revealed that he frequented his stash location daily and met with co-conspirators at the stash location. For example, Elroy Johnson, Mr. Miller's customer, met with Mr. Miller inside his stash location on December 19, 2023. After meeting with Mr. Miller, Johnson left the stash location concealing an item inside his clothing, entered his vehicle, and drove away. Investigators

stopped Johnson's vehicle for a traffic infraction, searched the vehicle, and recovered one kilogram of cocaine underneath the driver's seat. With evidence of Mr. Miller's drug trafficking, investigators applied for a search warrant to search his stash location and vehicle.

Meanwhile, another group of investigators were positioned outside the stash location to arrest Mr. Miller. Mr. Miller walked out of the stash location and entered his vehicle as investigators approached. Once he recognized law enforcement's presence, he attempted to flee but was quickly apprehended. He was arrested, and after being advised of his Miranda rights, he agreed to speak with investigators. Mr. Miller admitted to possessing cocaine and bulk currency inside his stash location.

After Mr. Miller's arrest, investigators searched his stash location and recovered one kilogram of cocaine from the basement and approximately $671,685 that was stored in two suitcases in the living room closet. Investigators also recovered three cell phones from Mr. Miller's vehicle.

Later that evening, investigators searched the hotel room that he was using. There, investigators obtained numerous items of luxury jewelry, including gold necklaces and chains, diamond pendants, a gold ring, and a Rolex Diamond Oyster Perpetual Datejust II watch, which were valued at approximately $215,000.

Investigators received separate court authorization to search Mr. Miller's phones. A search of his phones revealed additional evidence of Miller's drug trafficking in a WhatsApp message exchange. Based on the WhatsApp exchange, investigators believe that Mr. Miller arranged to purchase approximately 60 kilograms of cocaine with approximately $671,685 that was stored in his suitcases.

## GUIDELINES COMPUTATIONS

The Government agrees with the Guidelines calculation in the Presentence Investigation Report ("PSR"). Mr. Miller's Guidelines are 135 to 168 months based on a final offense level of 31 and Criminal History Category III. *See* PSR ¶¶ 32, 42, 71. The Government believes there are no applicable departures.

## FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

Mr. Miller has a history of firearms and drug convictions in the state system. He is now before this Court for his first federal drug trafficking conviction as a member in a large-scale drug trafficking conspiracy. Considering the factors set forth in 18 U.S.C § 3553(a), the Government submits that a sentence of 120 months' imprisonment is the appropriate disposition of this case.

    a. **Nature and Circumstances of the Offense**.

Drug trafficking is a serious offense. As to Mr. Miller's involvement, he operated a stash house for a large-scale drug trafficking conspiracy. Law enforcement seized over 100 kilograms of cocaine during the investigation. In Mr. Miller's case, investigators seized one kilogram of cocaine and $671,685 in cash that was stored in two suitcases. Mr. Miller arranged to purchase approximately 60 kilograms of cocaine with the cash stuffed in his suitcases, which were detailed in messages recovered from his cell phone. *See* Exhibit A[1]

The large quantities of drugs Mr. Miller possessed and intended to possess was intended for widespread distribution and would cause significant harm to people and communities affected by drug addiction and related crimes. The drugs themselves pose a danger to the community but also the violence and other social ills that are tied to the drug trade. As most recognize, drug trafficking presents a danger to the community. *See United States v. Douglas*, No. CR DKC 20-0249-001, 2020 WL 6063483, at *2 (D. Md. Oct. 14, 2020) (holding that "drug trafficking itself presents a danger to the community.").

Mr. Miller was a multi-kilogram drug trafficker. He distributed a kilogram of cocaine to his co-conspirator, Elroy Johnson Jr., and coordinated the delivery of approximately 60 kilograms of cocaine from Mexico to Maryland. Mr. Miller's involvement in the drug trade was substantial. Thus, the seriousness of Mr. Miller's offense cannot be mitigated. A 120-month sentence would appropriately reflect the seriousness of his offense.

    b. **History and Characteristics of the Defendant**.

As reflected in the PSR, Mr. Miller has a lengthy criminal history. He has five convictions and two of them are firearm offenses. In both firearm offenses, Mr. Miller failed to comply with his release terms. He violated his release terms twice in his 2011 firearm conviction. PSR ¶ 38. Notably, Mr. Miller obtained his second firearm conviction while on release for his first firearm conviction. Seven months after being released from his second firearm conviction, Mr. Miller violated his release terms. *Id*. at ¶ 40. Mr. Miller's criminal history reflects serious offenses and consistent noncompliance with his release terms.

There is a noticeable gap between Mr. Miller's last conviction in 2013 and his current offense. However, during that time, Mr. Miller remained heavily involved in the drug trade. In 2022, Mr. Miller retrieved a package containing 11 kilograms of cocaine during a targeted law enforcement operation, but he successfully fled from law enforcement officers and was not charged. *See* Exhibit B.[2] On March 31, 2022, law enforcement recovered 11 kilograms of cocaine in a UPS parcel that was in a UPS sorting facility. After discovering the cocaine, law enforcement conducted a controlled delivery to the address listed on the shipping label. Once the package was delivered to the specified residence, Mr. Miller and another person arrived in a car. Mr. Miller exited the passenger seat, picked up the package from the front porch of the residence, placed it in the trunk of the car, returned to the passenger seat, and left the scene. Law enforcement initiated

---

[1] Exhibit A is a transcript of the WhatsApp communications that were observed in Mr. Miller's phone.
[2] Exhibit B is the search warrant that authorized the search of Mr. Miller's stash location. In pages 3-9 of the affidavit, the Affiant discussed the 2022 drug investigation into Mr. Miller.

a traffic stop and Mr. Miller fled and escaped from the scene. Law enforcement searched the car and recovered Mr. Miller's personal property, including credit cards in his name and his cell phone.

Law enforcement searched his cell phone and discovered text messages discussing narcotics trafficking between Mr. Miller and Marcah Cheeves.[3] Despite being nearly apprehended by law enforcement with 11 kilograms of cocaine in 2022, Mr. Miller's drug trafficking escalated to purchasing 60 kilograms of cocaine directly from a distributor in Mexico.

While Mr. Miller's criminal history and escalating conduct is concerning, the Court should also consider his challenging upbringing that involved childhood exposure to violence and drug use. *See* PSR ¶56. The government recognizes those types of negative experiences during an individual's childhood increases the risk of various social issues that could negatively impact someone well into adulthood. Those experiences should be considered along with all other aspects of Miller's history and characteristics. The PSR also noted that he has a history of substance abuse. *Id*. at ¶63. When balancing Mr. Miller's criminal history against his challenging upbringing and substance abuse, a sentence of 120 months' imprisonment is sufficient, but not greater than necessary, to comply with the purposes § 3553(a).

c. **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**.

When determining Miller's sentence, the Court should consider the seriousness of his conduct and the need to promote respect for the law. As set forth in the Factual Background, Mr. Miller's role in this drug conspiracy was significant. This case reflects Mr. Miller's continued choice to engage in the narcotics trade. None of the actions underlying his crimes are the result of an accident or mistake. Instead, his actions appear motivated by greed and the fast money associated with the drug trade. Mr. Miller made a conscious decision to illegally possess, and conspire to distribute narcotics, putting the safety of the public at risk.

Considering Mr. Miller's significant involvement in a deadly trade, drug trafficking, the sentence imposed should also protect the public from him. Although Mr. Miller does not have a violent criminal history, his involvement in the drug trade contributes to violence and the social ills associated with that dangerous trade in the Baltimore community. There are daily reminders in the news regarding shootings, murders, home invasions, or other similar violence related to drug trafficking. The sheer quantity of drugs and cash Mr. Miller possessed showed he was heavily involved in a dangerous trade.

The sentence should reflect Mr. Miller's culpability relative to his co-defendant. His co-defendant, Elroy Johnson Jr., was sentenced 70 months' incarceration. Johnson Jr. was one of Mr. Miller's drug customers who purchased one kilogram of cocaine. Considering that Mr. Miller

---

[3] Cheeves was sentenced to 78 months' imprisonment for possession with intent to distribute controlled substances in the United States District Court for the Western District of Virginia. Criminal No. 5:22-CR-11.

coordinated the shipment of approximately 60 kilograms of cocaine, his role in the conspiracy was much greater than Johnson Jr.

Lastly, a sentence that reflects the seriousness of this crime and Mr. Miller's history of recidivism is important for specific deterrence. Despite his numerous convictions in the state system and his escape from being charged with 11 kilograms of cocaine in 2022, Mr. Miller is before this Court for a serious drug trafficking offense. The sentence imposed should specifically deter Mr. Miller from engaging in future criminal conduct. Additionally, the sentence imposed should provide general deterrence. A sentence of 120 months' imprisonment will send a message to the community that conspiring to distribute drugs will not be tolerated and will result in federal prosecution and lengthy sentences in the Bureau of Prisons.

*     *     *

The Government believes 120 months' imprisonment is an appropriate sentence that is sufficient but not greater than necessary to achieve the required purposes of sentencing.

Thank you for your attention to this matter.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

/s/ Calvin C. Miner
Calvin C. Miner
Assistant United States Attorney


cc:    Jeremy Eldridge (via CM/ECF)
       Carissa Perez, U.S. Probation Officer (via e-mail)